IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Cincinnati Insurance Company, ) | |
| ) | C.A. No.: 7:04-1057-HMH |
| Plaintiff, ) | |
| ) | |
| vs. ) | **OPINION AND ORDER** |
| ) | |
| Urgent Care Pharmacy, Inc., W. Ray ) | |
| Burns, R. Ken Mason, Jr., G. David ) | |
| Scyster as Administrator of the ) | |
| Estate of Mary Virginia Scyster and ) | |
| Individually, Virginia Rauch, Robert ) | |
| Conrad, as Administrator of the ) | |
| Estate of Vivian Conrad and Individually, ) | |
| Donald M. Boles, Annie ) | |
| McGill, Evelyn Arroyo, Daniel ) | |
| Bowman, James Hickman, Shirley ) | |
| Kus, Robert D. Black, and Deborah ) | |
| J. Hensley, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on cross motions for summary judgment. After a review of the law and the facts of this case, the court denies Cincinnati Insurance Company's ("Cincinnati") motion for summary judgment and grants G. David Scyster ("Scyster"), Virginia Rauch ("Rauch"), Robert Conrad, as Administrator of the Estate of Vivian Conrad and Individually ("Conrad"), Annie McGill ("McGill"), and Donald M. Boles' ("Boles") (collectively "Movants") motion for summary judgment.[1]

---

[1] Evelyn Arroyo and Robert D. Black have been dismissed. Shirley Kus and Deborah J. Hensley are in default. Daniel Bowman, James Hickman, and Urgent Care Pharmacy, Inc. have not appeared in this action, but default has not been entered against them. W. Ray Burns and R. Ken Mason, Jr. have not filed dispositive motions.

1

## I. FACTUAL BACKGROUND

Cincinnati filed a declaratory judgment action to determine whether Urgent Care Pharmacy, Inc. ("Urgent Care") was covered under Businessowners Package Policy number BOP1769962 ("the Policy") for the period of November 21, 1999, to November 21, 2002. (Compl. Ex. 1 (Policy).) R. Ken Mason, Jr. ("Mason"), the pharmacist-in-charge at Urgent Care, and W. Ray Burns ("Burns"), the owner of Urgent Care, are insureds under the Policy.

The underlying facts are as follows. Urgent Care was a compounding pharmacy in Spartanburg, South Carolina. Urgent Care had the capability to make methylprednisolone (hereinafter "Drug"), a sterile injectable drug that is typically injected into the lower back to treat pain. (Movants' Mem. Supp. Summ. J. 9.) During the first part of 2002, this Drug became commercially unavailable because the manufacturer, UpJohn, ceased manufacturing it. (Id.) As such, health care providers sought an alternate source for the Drug. (Id.)

In mid-2002, patients who had been injected with the Drug made by Urgent Care began to get sick. (Id. 12.) It was later determined that the Drug was contaminated with a fungus. (Pl's. Mem. Supp. Summ. J. 3 Ex. 11 (Burns Dep. 36).) As a result, the South Carolina Board of Pharmacy ("Board") investigated Urgent Care. The Board issued a Cease and Desist Order on September 27, 2002, closing Urgent Care. (Pl.'s Mem. Supp. Summ. J. 4 Ex. 4 (Cease and Desist Order).) The Movants are persons who were injured or killed as a result of receiving injections of the Drug. (Movants' Mem. Supp. Summ. J. 4-5.)

In its motion for summary judgment, Cincinnati seeks a declaration that the Movants' claims are not covered because Urgent Care was manufacturing the Drug in violation of exclusion j ("Exclusion j") set forth in Policy section II.B. (Pl.'s Mem. Supp. Summ. J. 13-14.). In the alternative, Cincinnati alleges that the Policy does not cover the Movants' claims because Urgent Care was compounding the Drug in bulk, which is not covered pursuant to Exclusion j. (Id.)

The Movants' motion for summary judgment on their counterclaim requests a declaration that (1) "Cincinnati's policy does provide coverage to Urgent Care, Burns, and Mason for liability arising out of the [Drug]"; and (2) because no policy limits are indicated in the Policy, the Policy "provides coverage to the full extent" of each Movant's claim. (Movants' Mem. Supp. Summ. J. 5.)

## II. Discussion of the Law

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

3

However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

### B. Exclusion j

"Insurance policies are subject to general rules of contract construction." State Farm Mut. Auto. Ins. Co. v. Calcutt, 530 S.E.2d 896, 897 (S.C. Ct. App. 2000) (internal quotation marks omitted). Courts must "give policy language its plain, ordinary and popular meaning." Id. "When the contract is unambiguous, clear, and explicit, it must be construed according to the terms used by the parties." Myers v. Nat'l States Ins. Co., 606 S.E.2d 486, 488 (S.C. Ct. App. 2004). "The judicial function of a court of law is to enforce an insurance contract as made by the parties, and not to rewrite or to distort, under the guise of judicial construction, contracts, the terms of which are plain and unambiguous." Stewart v. State Farm Mut. Auto. Ins. Co., 533 S.E.2d 597, 601 (S.C. Ct. App. 2000). "Where language used in an insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted." Poston v. Nat'l Fid. Life Ins. Co., 399 S.E.2d 770, 772 (S.C. 1990) (internal quotation marks omitted). In other words, "when an insurance policy . . . is susceptible to more than one reasonable interpretation, one of which would provide coverage, th[e] Court must hold as a matter of law in favor of coverage." Gaskins v. Blue Cross-Blue Shield of South Carolina, 245 S.E.2d 598, 602 (S.C. 1978).

Cincinnati alleges that the Policy excludes coverage for Urgent Care because it was manufacturing the Drug or compounding the Drug in bulk, activities which are excluded from

4

coverage under Exclusion j. (Pl.'s Mem. Supp. Summ. J. 13-14.). The Movants contend that Exclusion j does not apply to the professional liability coverage because the Policy specifically states that the exclusion applies only to business liability coverage.

The Policy is a Businessowners Package Policy with four sections: "I. Property," "II. Business Liability," "III. Common Policy Conditions," and "IV. State Conformance." (Compl. Ex. 1 (Policy p. 1 of 40).) The Policy declarations state under the title "OPTIONAL COVERAGES" that "[t]he following optional coverages, if any, are provided under this policy, only if indicated by X." (Id. (Policy Declarations).) The box for optional professional liability coverage contains an X. (Id.) The declarations further provide that professional liability coverage is "Per attached form." (Id.) No additional form has been provided by Cincinnati outlining the professional liability coverage. Instead, Cincinnati alleges that no additional form exists, and that professional liability coverage is provided within the business liability coverage. (Pl.'s Mem. Opp'n Movants' Summ. J. 3.) There is no Policy section dealing specifically with professional liability coverage. In fact, professional liability coverage is referenced in only two places in the Policy: in Exclusion j and in a Policy endorsement.

Exclusion j appears in the Policy, in pertinent part, as follows:

B. Exclusions

1. **Applicable to Business Liability Coverage.**

This insurance does not apply to:

. . . .

j.      "Bodily injury", "property damage", "personal injury" or "advertising injury" due to rendering or failure to render professional services unless

5

>professional liability coverage has been endorsed hereon or stated in the declarations.
>
>This includes but is not limited to:
>
>. . . .
>
>9) Services in the practice of pharmacy.
>
>However, this exclusion does not apply to an insured whose operations include those of a retail druggist, retail drug store or any retail drug store which the insured has discontinued using, providing there is not willful violation of a penal statute or ordinance relating to the sale of pharmaceuticals by or with the knowledge or consent of any insured.
>
>This coverage does not apply to "property damage" arising out of:
>
>Any goods or products (including drugs or medicines) or containers prepared, sold, handled, or distributed by the insured.
>
>This policy does not provide coverage for "Bodily Injury" or "Property Damage" arising out of products manufactured or compounded in bulk for sale by the insured to others.

(Compl. Ex. 1 (Policy section II.B.1., Exclusion j, pp. 26-28 of 40) (emphasis in original).)

Cincinnati submits that "[s]ince Urgent Care's professional liability coverage is an optional coverage under [the Policy], which comprises two parts, for property and business liability, the only logical place for it is under the Business Liability Part. Exclusion j, which provides the policy's only description of professional liability coverage, is found within the Business Liability Coverage Part." (Pl.'s Reply Supp. Summ. J. 3.) Cincinnati essentially contends that Exclusion j sets forth the extent of the professional liability coverage because that is the only place it is addressed in the Policy. The court disagrees. "The meaning of a particular word or phrase is not determined by considering the word or phrase by itself, but by reading the policy as a whole and considering the context and subject matter of the

6

insurance contract." Schulmeyer v. State Farm Fire and Cas. Co., 579 S.E.2d 132, 134 (S.C. 2003).

First, an insured would not expect optional insurance coverage to be solely set forth in an exclusion. An exclusion in an insurance policy "is a limitation of liability or a carving out of certain types of loss to which the coverage or protection of the policy does not apply." Richard A. Lord, 17 Williston on Contracts § 49:111 (4th ed.). Further, "[e]xclusions in an insurance policy are to be interpreted narrowly and to the benefit of the insured." Horry County v. Ins. Reserve Fund, 544 S.E.2d 637, 640 (S.C. Ct. App. 2001).

In addition, the Policy declarations provide that the professional liability coverage is "Per attached form." (Compl. Ex. 1 (Policy Declarations).) There is no Policy section outlining the optional professional liability coverage, which supports the conclusion that an additional form was intended to outline the optional professional liability coverage under the Policy. Cf. Allegheny Airlines, Inc. v. Forth Corp., 663 F.2d 751, 759 (7th Cir. 1981) (finding that Forth Corporation was a named insured under policy because "[t]he parenthetical phrase 'See Endorsement # 1' contained on the Declaration page under the heading 'Named Insured and Address' and the naming of Forth in [the additional insured] endorsement manifest[ed] the intent of the parties that Forth would be a 'Named Insured' under the policy.")

Notably, the Policy endorsement related to cancellation and nonrenewal provides:
This endorsement modifies insurance provided under the following:

**PROFESSIONAL LIABILITY COVERAGE FORM**

> The Cancellation and Nonrenewal provisions that apply to the Dentist's or Businessowners Policy, Section II, Business Liability Coverage Part also apply to the Professional Liability Coverage Endorsement.

(Compl. Ex. 1 (Policy Cancellation and Nonrenewal Endorsement).) Cincinnati alleges that the endorsement is inapplicable because professional liability coverage was not endorsed on the Policy, but stated in the declarations. However, this endorsement further supports the conclusion that professional liability coverage was intended to be set forth in a separate form, as stated in the declarations.

The Policy expressly provides coverage for property and business liability. Section I is property, and section I.A. is titled "**Coverage**." (Id. (Policy section I.A., p. 2 of 40).) Section II is business liability, and section II.A. is titled "**Coverages**." (Id. (Policy section II.A., p. 25 of 40).) Notably, section I.G. is titled "**Optional Coverages**" but does not address professional liability coverage. (Id. (Policy section I.G., p. 21 of 40).)

The Policy headings under section II, business liability, support the conclusion that the exclusions in section II pertain solely to the business liability coverage. The Policy provides under section II.B.1 that the exclusions, including Exclusion j, are "**Applicable to Business Liability Coverage**." (Id. (Policy section II.B.1, p. 26 of 40).) This indicates that Exclusion j may be inapplicable to professional liability coverage. Moreover, the fact that Cincinnati bolded this language is significant in interpreting the Policy. See e.g., Coakley v. Horace Mann Ins. Co., 609 S.E.2d 537, 543 (S.C. Ct. App. 2005) (relying on the bolding and italicizing of headings in insurance policy to assist in interpreting the policy).

In contrast, Exclusion j provides that injury "due to rendering or failure to render professional services [is not covered under the Policy] unless professional liability coverage

has been endorsed hereon or stated in the declarations." (Compl. Ex. 1 (Policy section II.B.1, Exclusion j, p. 28 of 40).) Professional liability coverage is stated in the declarations. As such, this language supports Cincinnati's conclusion that Exclusion j may set forth the professional liability coverage.

Based on the foregoing, after considering the Policy as a whole, the court finds that Policy section II.B.1, Exclusion j is capable of two reasonable interpretations. First, Exclusion j may only apply to business liability coverage. The Policy provides that section II.B.1 exclusions are applicable to business liability coverage. Moreover, the declarations state that professional liability coverage is provided "Per attached form." Further, professional liability coverage is not outlined anywhere in the Policy. Alternatively, Exclusion j could set forth the professional liability coverage. Exclusion j provides that bodily injury or property damage arising out of professional services is not excluded from coverage if professional liability is endorsed or stated in the declarations.

Under South Carolina law, the court is required to adopt the Policy construction most favorable to the insured. Poston, 399 S.E.2d at 772. As such, the court finds that Exclusion j is inapplicable to professional liability coverage. Because Exclusion j does not apply, the Movants' claims are covered under the Policy. See Gaskins, 245 S.E.2d at 602. Therefore, the Movants' motion for summary judgment on their counterclaim requesting a declaration that the Policy covers the Movants' claims is granted. Because the court finds that the Movants are entitled to summary judgment on this claim, the court need not address Cincinnati's argument that Exclusion j precludes coverage of the Movants' claims.

### C. Limits of Professional Liability Coverage

9

The Movants allege that there are no limits of liability for the professional liability coverage under the Policy, and seek a declaration that "Cincinnati is obligated under its policy for the full amount of each Movant's claim." (Movants' Mem. Supp. Summ. J. 24.)

In the Policy declarations, the section for business liability limits is titled "SECTION II–BUSINESS LIABILITY LIMITS OF INSURANCE." (Compl. Ex. 1 (Policy Declarations).) Under this title, the declarations provide business liability limits of $1,000,000 per occurrence; medical expense limits of $5,000 for any one person; and fire, explosion, and water damage legal liability limits of $1,000,000 for any one fire, explosion, or loss by water. (Id.) In addition, the Policy provides, in section II.D of the business liability section under the title "**Liability and Medical Expenses Limits of Insurance,**" the following:

> 1. The <u>Limits of Insurance shown in the Declarations</u> and the rules below declare the most we will pay regardless of the number of:
>
>     a. Insureds;
>     b. Claims made or "suits" brought; or
>     c. Persons or organizations making claims or bringing "suits."
>     . . . .
>
> **4.    Aggregate Limits**
>
> The most we will pay for:
>
> a. Injury or damage under the "products-completed operations hazard" arising from all "occurrences" during the policy period is the Liability and Medical Expenses limit.
>
> The limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

(Id. (Policy section II.D., p. 32 of 40) (emphasis added).).  Cincinnati argues that the Policy "set[s] forth clear limits on liability."  (Pl.'s Mem. Opp'n Movants' Summ. J. 5-6.)  The court agrees that the declarations provide clear liability limits for business liability and property coverage.  However, Cincinnati alleges that the limits for business liability coverage apply to professional liability coverage without presenting any evidence that supports this conclusion.

The affidavit of Troy Reichers ("Reichers"), an associate manager for Cincinnati, merely avers that the Policy provides an aggregate liability limit of $1,500,000, which is the business liability limits plus the medical expenses limit as set forth in section II.D of the business liability section of the Policy.  (Id. Ex. A. (Reichers Aff. ¶¶ 1, 3).)  Cincinnati fails to explain how the aggregate limit for business liability coverage applies to the optional professional liability coverage.  In addition, Cincinnati alleges that common sense dictates that the intent was to limit professional liability coverage because the annual premium was only $713.00.  (Pl.'s Mem. Opp'n Movants' Mot. Summ. J. 4.)  However, other than common sense, Cincinnati does not allege what limits of professional liability insurance an annual premium of $713.00 would purchase for a pharmacy such as Urgent Care.  Cincinnati simply concludes that the business liability limits are the professional liability limits without coming forward with any evidence that supports this conclusion.

Finally, Cincinnati alleges that the fact that Urgent Care obtained excess coverage from Pharmacists Mutual Insurance Company ("Pharmacists Mutual") indicates that Urgent Care knew that the professional liability coverage was limited under the Policy.  However, as the Movants point out, the Pharmacists Mutual policy was Mason's individual policy, and

Urgent Care is not an insured under that policy. (Movants' Reply Supp. Summ. J. 3 Ex. B (Mason Application for Pharmacists Mutual Policy) & Ex. C (Pharmacists Mutual Policy).) As such, Cincinnati's argument is without merit.

"The Court has no power to interpolate into the agreement between the insurer and the insured a condition or stipulation not contemplated either by the law or by the contract between the parties." Quinn v. State Farm Mut. Auto. Ins. Co., 120 S.E.2d 15, 16 (S.C. 1961). As such, the court cannot read professional liability limits into the Policy because nowhere in the Policy are professional liability limits contemplated. Based on the foregoing, the court finds that the Policy language related to limits of insurance provides no liability limits for the optional professional liability coverage.

Because the Policy provides no liability limits for professional liability coverage, Cincinnati is liable to the full extent of each Movant's damages. In Williamson v. South Carolina Ins. Reserve Fund, 586 S.E.2d 115, 119 (S.C. 2003), the insurance policy included limits of liability language taken verbatim from South Carolina Code of Laws section 15-78-120, which sets forth liability limits under the Tort Claims Act. However, when the action accrued in January 1997, the liability limits within section 15-78-120(a)(3) & (a)(4) had been effectively repealed. Id. Therefore, the Williamson court held that the insurance reserve had to pay the total damages irrespective of the liability limits stated in the policy. Similarly, the court finds that professional liability coverage in this case is unlimited under the Policy.

Moreover, an e-mail from Glenn Greer ("Greer"), a Cincinnati Claims Representative, regarding the Policy's professional liability coverage supports the court's finding. The e-mail states in pertinent part:

12

> Ginny,
>
> I have spoken with the Agent John Brigman of Keenan and Suggs (39‑026) this morning, There is no umbrella and therefore the only applicable coverages are listed on the dec.  <u>These coverages are for 1 million per occurrence and a professional liability the agent believes is for 1 million as well, but he does not have copy of professional liability on file. I am sending you this as I believe we have a limits case possibility.</u>  I will be sending this overnight to Bob Wallace along with doing my report.  I am putting the full limit on the reserve.
>
> Call me with any questions.
>
> Glenn W. Greer
> Claims Representative for Cincinnati Insurance
> Eastern Upstate South Carolina

(Movants' Reply Supp. Summ. J. Ex. D (E-mail from Greer to Ginny Paine (Oct. 10, 2002) (emphasis added).)  This e-mail indicates that professional liability was contained in a separate form, which stated separate limits of liability.

Cincinnati alleges that this e-mail is inadmissable, and therefore, the court cannot consider it.  (Pl.'s Mem. Opp'n Movants' Summ. J. 3.)  Cincinnati produced the e-mail during discovery in this case.  (Movants' Reply Supp. Summ. J. Ex. E (Pl.'s Response to Request for Production of 9/14/04).)  Cincinnati alleges that the Movants have not established the e-mail's authenticity pursuant to Rule 901(a) of the Federal Rules of Evidence.  (Pl.'s Mem. Opp'n Movants' Summ. J. 3.)  Cincinnati's argument is without merit.  The e-mail is relevant, and Cincinnati has given no reason for the court to question its authenticity.  As such, this e-mail further supports the court's finding that the Policy provides no liability limits for professional liability coverage.  Thus, the Movants' motion for summary judgment on

their counterclaim requesting a declaration that Cincinnati is obligated under the Policy for the full amount of each Movant's claim is granted.[2]

Therefore, it is

**ORDERED** that Cincinnati's motion for summary judgment, document number 70, is denied. It is further

**ORDERED** that the Movants' motion for summary judgment, document number 68, is granted.

**IT IS SO ORDERED.**

s/ Henry M. Herlong, Jr.
United States District Judge

Greenville, South Carolina
February 7, 2006

---

[2] Having found that the Policy stated no limits of liability for professional liability coverage, the court need not address Cincinnati's argument regarding the number of occurrences under the Policy based on the business liability coverage limit of $1,000,000 per occurrence.